J-S52012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF: J.B.D.E. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.R., MOTHER | No. 569 MDA 2018 |

Appeal from the Decree Entered March 7, 2018
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):
169 AD 2017
CP-22-DP-0000093-2016

BEFORE: BENDER, P.J.E., MCLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED OCTOBER 23, 2018**

T.R. ("Mother") appeals from the decree entered on March 7, 2018, in the Court of Common Pleas of Dauphin County, which involuntarily terminated her parental rights to her minor child, J.B.D.E. ("Child"), born in March of 2016.[1] Additionally, Mother's counsel has filed a petition to withdraw and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[2] Upon review, we deny counsel's petition to withdraw, remand with instructions and retain jurisdiction.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court entered a separate decree that same day terminating the parental rights of Child's father, H.S.E. Father did not file an appeal.

[2] Neither the Agency nor the guardian *ad litem* has submitted responsive briefs with this Court.

The trial court summarized the factual and procedural history of this matter as follows:

In November 2015, the Dauphin County Social Services for Children and Youth ("Agency") began providing services to Mother following a report from a pediatrician's office that Mother appeared dazed and confused during an appointment for her three year old. Mother's two children were deemed dependent and placed in kinship foster care. Five months pregnant with J.B.D.E. at the time, Mother tested positive for PCP. Mother told case workers that her use of PCP did not affect her ability to parent. Throughout the pregnancy, Mother's obstetrician urged her to stop her drug use.

At the time of J.B.D.E.'s birth [i]n March [of] 2016, the Agency received a referral from hospital staff based upon Mother's statement that she could not breast feed J.B.D.E. because she used alcohol and PCP during her pregnancy. J.B.D.E. was admitted to the neonatal intensive care unit because of serious medical problems caused by Mother's substance abuse. On March 21, 2016, the Agency filed an emergency Dependency Petition. Upon discharge from the hospital, J.B.D.E. was placed in a Dauphin County Families United foster home. Within one week of J.B.D.E.'s birth, Mother tested positive for PCP. On April 6, 2016, J.B.D.E. was adjudicated dependent.

The Juvenile Court ordered that Mother complete the following objectives:

1. Attend all court hearings, Agency meetings and treatment plan meetings;
2. Sign all release of information forms requested by the Agency;
3. Notify the Agency within 24 hours of new residence or new contact information;
4. Complete a drug and alcohol evaluation and follow through with any and all recommendations;
5. Provide three urine screens to the Agency per week;
6. Notify the Agency caseworker of any scheduled evaluations;
7. Participate in the Holistic Family Support Program;

8. Complete a psychological evaluation and follow through with any recommendations;
9. Participate in and complete a parenting assessment in order to assess if Mother has the capability to provide a safe and stable living environment.

(Petition for Involuntary Termination of Parental Rights, para. ccc (i- ix)).

On June 20, 2016, Mother was incarcerated related to her occupying a stolen vehicle. Mother remained incarcerated until June 30, 2016. Upon her release, Mother entered an inpatient drug and alcohol treatment program, which she left against medical advice on August 12, 2016. Mother was again incarcerated in November 2016 for violation of bail conditions.

On February 28, 2017, Mother was arrested and found in possession of a firearm. On July 11, 2017, Mother pled guilty to firearms and drug charges and [was] sentenced to nine to twenty[-]three months to be served in the Dauphin County Work Release Center. Mother was released from the Work Release Center on December 14, 2017. Following release, on January 25, 2018, Mother tested positive for PCP.

Mother failed to complete any inpatient or outpatient drug and alcohol program, or psychological evaluation. Mother participated in supervised visitation while not incarcerated. Because of her incarceration, Mother failed to comply with services offered to assist with housing.

J.B.D.E. has lived in the same foster home since discharge from the hospital. He is developmentally delayed. J.B.D.E. requires a feeding tube and suffers seizures related to Fetal Alcohol Syndrome. J.B.D.E.'s medical conditions require constant, intensive caretaking. J.B.D.E. sees specialists several times each month, or more frequently if he becomes ill. The foster parents have received instruction from the medical providers to care for J.B.D.E.'s significant medical conditions.

J.B.D.E. is bonded with his foster parents and has made tremendous progress under their care and has begun to walk, although not previously expected to do so.

> J.B.D.E. has never lived with Mother. Mother has never provided any essential parental care. Because of Mother's lack of experience in handling J.B.D.E.'s seizures, the foster parents attend Mother's visitation. J.B.D.E. has undergone multiple surgeries. Mother never visited J.B.D.E. during any hospitalization. Mother has never met with medical providers to obtain information as to how to care for J.B.D.E.'s needs.

Trial Court Opinion, 5/22/18, at 1-4 (citations to the record omitted).

On December 29, 2017, the Agency filed the petition to involuntarily terminate Mother's parental rights. The termination hearing was held on March 6, 2018. After all evidence was submitted, the court announced its decision to grant the Agency's petition to terminate Mother's parental rights under 23 Pa.C.S. § 2511(a)(1), (2) and (b) and to change the goal for Child to adoption. On April 3, 2018, Mother filed the instant appeal. Then, on June 22, 2018, Mother's counsel filed an **Anders** brief.[3] Counsel's petition to withdraw was filed on July 6, 2018, after counsel was directed to do so by order of this Court, dated July 2, 2018. Mother has not responded to counsel's petition.

Before reaching the merits of Mother's appeal, we must first address counsel's request to withdraw. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing

---

[3] Counsel's statement that there are no non-frivolous matters that can be raised on appeal is accepted in lieu of a concise statement of errors complained of on appeal. **See Commonwealth v. Goodwin**, 928 A.2d 287, 293 (Pa. Super. 2007); **see also** Pa.R.A.P. 1925(c)(4).

- 4 -

on the request to withdraw.'") (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)). "In **In re V.E.**, 417 Pa. Super. 68, 611 A.2d 1267 (1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights." **In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014). To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an **Anders** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, counsel has filed a petition to withdraw, certifying that she has reviewed the case and determined that Mother's appeal is wholly frivolous. Counsel has attached to her brief and to her petition to withdraw a copy of her letter to Mother, advising her that she may obtain new counsel or raise additional issues *pro se*. The brief that counsel filed with this Court includes a summary of the history and facts of the case and identifies one issue, which is stated as follows:

> Did the trial court abuse its discretion[] or commit an error of law by determining it was in the [Child's] best interest to have Mother's parental rights terminated by clear and convincing evidence?

*Anders* brief at 9.

However, counsel's assessment as to why this issue is frivolous does not refer to the best interests of Child. Rather, the argument section of the brief only discusses Mother's lack of compliance with the services that were offered to her by the Agency. Specifically, the brief addresses Mother's lack of progress with her substance abuse, housing, mental health treatment, and her failure to complete a parenting assessment. None of counsel's discussion in the argument section of the *Anders* brief relates to any consideration of the needs and welfare of Child. We, therefore, are compelled to conclude that counsel has not complied with the requirements of *Anders* or for that matter

- 6 -

with the normal procedure associated with an argument that addresses the issue raised as enumerated in the Pennsylvania Rules of Appellate Procedure.[4]

Accordingly, we must deny counsel's petition to withdraw. We remand for counsel to either submit a corrected **Anders** brief or an advocate's brief within thirty days of the date this memorandum is filed.

Petition to withdraw denied. Case remanded with instructions. Jurisdiction retained.

---

[4] In light of the fact that we conclude counsel has failed to substantially comply with the **Anders** and **Santiago** requirements, we are unable to proceed to review the issue as it is presented in the **Anders** brief. Moreover, we are unable to conduct our independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel. **See Commonwealth v. Flowers**, 113 A.3d 1246 (Pa. Super. 2015).